> **Style Definition:** Default Paragraph Font

~~DISTRICT~~IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| **JOSEPH JOHNSON, JR.** | § |
| ~~POST OFFICE BOX 441572~~ | § |
| ~~FORT WASHINGTON, MD  20749-1572~~ | § |
| | § |
| Plaintiff, | § |
| | § |
| Vs. | § CIVIL NO. <u>CAL15-36931</u> |
| | § |
| ~~MAXIMUMS~~MAXIMUS INC., d/b/a, | § **COMPARISON COPY** |
| **MAXIMUS FEDERAL SERVICES, INC.** | § |
| ~~SERVE: CSC-LAWYERS INCORPORATING~~ | § |
| ~~SERVICE COMPANY, Resident Agent~~ | § |
| ~~7 SAINT PAUL STREET, SUITE 820~~ | § |
| ~~BALTIMORE, MD  21202~~ | § |
| | § |
| ~~And~~ | § |
| | § |
| ~~FINANCIAL MANAGEMENT SYSTEMS (FMS)~~ | § |
| ~~SERVIE: THE CORPORATION TRUST~~ | § |
| ~~INCORPORATED, Resident Agent~~ | § |
| ~~351 WEST CAMDEN STREET~~ | § |
| ~~BALTIMORE, MD 21201~~ | § |
| | § |
| ~~And~~ | § |
| | § |
| ~~CONTINENTAL SERVICE GROUP, INC.,~~ | § |
| ~~d/b/a CONSERVE~~ | § |
| ~~SERVE: CSC-LAWYERS INCORPORATING~~ | § |
| ~~SERVICE COMPANY, Resident Agent~~ | § |
| ~~7 ST. PAUL STREET, SUITE 820~~ | § |
| ~~BALTIMORE, MD 21202~~ ., *et al*, | § |
| | § |
| Defendants. | § |

### FIRST AMENDED COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Joseph Johnson, Jr., and <u>files this First Amended Complaint, and</u> represents to the Court that:

## JURISDICTION

1.　This Court has jurisdiction over the matters alleged herein as the acts and omissions given rise to this Complaint occurred in Prince George's County, Maryland.

## PARTIES

2.　Plaintiff is a resident in Fort Washington, Maryland, and is a "person" as that term is defined by Md. Code Ann., Commercial Law Art. §14-201(d).

3.　Defendant, Maximus, Inc., d/b/a, Maximus Federal Services, Inc. ("Maximus") is a foreign Virginia Corporation and is engaged in the business of collecting debts in this state and, and at all times relevant, was registered and doing business in this state as a "collector" as that term is defined by Md. Code Ann., Commercial Law Art. §14-201(b) because it uses instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

4.　Defendant, Financial Management Systems (FMS) is a foreign Illinois Corporation and is also engaged in the business of collecting debts in this state, and at all times relevant, was registered and doing business in this state as a "collector" as that term is defined by Md. Code Ann., Commercial Law Art. §14-201(b) because it uses instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

5.　Defendant, Continental Service Group, Inc. d/b/a ConServe is a foreign New York Corporation and is also engaged in the business of collecting debts in this

state, and at all times relevant, was registered and doing business in this state as a "collector" as that term is defined by Md. Code Ann., Commercial Law Art. §14-201(b) because it uses instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

~~JURISDICTION~~

~~5.1.    This Court has jurisdiction over the matters alleged herein as the acts and omissions given rise to this Complaint occurred in Prince George's County, Maryland.~~

**FACTUAL ALLEGATIONS**

6.      At all times relevant, Plaintiff was a borrower that previously had an obligation to repay a student loan to the U.S. Department of Education pursuant to a Federal Direct Consolidation Loan Promissory Note dated April 26, 2004 which was a "consumer transaction" as defined by Md. Code Ann., Commercial Law Art. §14-201(c), hereinafter the "federal Direct Loan".

7.      At all times further relevant, Plaintiff's federal Direct Loan was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012, hereinafter the "disputed debt". ~~*See* Exhibits 1 and 2.~~

8.      On September 30, 2013, Defendant Maximus was awarded a contract to service certain student loans issued by the U.S. Department of Education, and since that time has begun servicing those student loans under the contract it was awarded.

9.      On or ~~about~~around July 20, 2015, Defendant Maximus sent Plaintiff a debt statement falsely claiming that Plaintiff was delinquent on his student loan and that

Plaintiff owed the U.S. Department of Education $40,832.38. Defendant also threatened to collect that amount from the Plaintiff by Treasury offset against all payment streams.

10.     On July 27, 2015, Plaintiff advised Defendant Maximus that the debt was not owed in the amount ~~claim~~claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff ~~also~~ provided Defendant with proof that the debt had been paid and_fully satisfied.

11.     Plaintiff requested that Defendant Maximus validate the debt and ~~to~~ cease reporting derogatory credit information to credit reporting agencies concerning the student loan debt ~~and to~~. Please also requested that the Defendant cease and desist further collection efforts on the disputed debt. ~~Plaintiff also~~ and instructed the Defendant ~~Maximus~~ to update the credit bureau reports to which they had reported the disputed debt and to delete the trade line from each of those credit bureau reports immediately.

12.     Despite Plaintiff's written notification to Defendant Maximus that the ~~student loan~~ debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendant Maximus continued to attempt to collect ~~the debt~~ and report the debt to third parties as being past due and in a collection status in an amount not owed by the Plaintiff without any lawful basis for collecting or attempting to collect on the disputed debt.

13.     In disregard of Plaintiff's request for a debt validation, Defendant Maximus never sent Plaintiff a validation of the debt and instead transferred the Plaintiff's debt to Defendant Financial Management Systems (FMS) for collection, and on or about September 1, 2015, Plaintiff received a dunning letter from Defendant FMS

4

stating that Plaintiff's debt had been placed with Defendant FMS for collection and falsely stating that Plaintiff owed the U.S. Department of Education $51,013.76.

14.     On September 14, 2015, Plaintiff advised Defendant FMS that the debt was not owed in the amount claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff also provided Defendant FMS with proof that the debt had been paid and fully satisfied.

15.     Plaintiff requested that Defendant FMS validate the debt and to cease reporting derogatory credit information to credit reporting agencies concerning the student loan debt and to . Please also requested that the Defendant cease and desist further collection efforts on the disputed debt. Plaintiff also and instructed the Defendant FMS to update the credit bureau reports to which they had reported the disputed debt and to delete the trade line from each of those credit bureau reports immediately.

16.     Despite Plaintiff's written notification to Defendant FMS that the student loan debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendant FMS continued to attempt to collect the debt and report the debt to third parties as being past due and in a collection status in an amount not owed by the Plaintiff without any lawful basis for collecting or attempting to collect on the disputed debt.

17.     In disregard of Plaintiff's request for a debt validation, Defendant FMS never sent Plaintiff a validation of the debt and instead transferred Plaintiff's debt to Defendant Continental Service Group (hereinafter, "("ConServe") for collection, and on or about September 24, 2015, Plaintiff received a dunning letter from Defendant

ConServe stating that Plaintiff's debt had been placed with Defendant ConServe for collection and falsely stating that Plaintiff owed the U.S. Department of Education $51, 129.88.

18.     On October 2, 2015, Plaintiff advised Defendant ConServe that the debt was not owed in the amount claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff ~~also~~ provided Defendant ~~ConServe~~ with proof that the debt had been paid and fully satisfied.

19.     Plaintiff requested that Defendant ConServe validate the debt and ~~to~~ cease reporting derogatory credit information to credit reporting agencies concerning the ~~student loan debt and to~~ debt. Please also requested that the Defendant cease and desist further collection efforts on the disputed debt. ~~Plaintiff also~~ and instructed the Defendant ~~ConServe~~ to update the credit bureau reports to which they had reported the disputed debt and to delete the trade line from each of those credit bureau reports immediately.

20.     Despite Plaintiff's written notification to Defendant ConServe that the ~~student loan~~ debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendant ConServe never validated the debt and continued to attempt to collect ~~the debt~~ and report the debt to third parties as being past due and in a collection status in an amount not owed by the Plaintiff without any lawful basis for collecting or attempting to collect on the disputed debt.

21.     Defendants ~~continue,~~ and each of them, have continued to report derogatory information about the status of the disputed debt to third parties, have failed to report the debt as disputed and have continued to collect or attempt to collect on the debt

6

with actual knowledge that the debt is~~was~~ paid and satisfied in full~~, that the debt is~~ ~~disputed~~ and was not owed in the amount claimed~~, and as.~~ As a result, Plaintiff has sustained and continues to sustain damages.

## COUNT I: AGAINST DEFENDANT MAXIMUS
### (Defamation/Libel/Slander)

22.    Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

23.    Beginning on or about July 20, 2015, and continuing thereafter, Defendant Maximus made or caused to be made unprivileged publication of statements to third parties to the effect that Plaintiff was delinquent for more than 790 months on his student loan with the U.S. Department of Education in the amount of $40,832.38.

24.    ~~Defendant~~ Maximus' statements were false and slanderous and were made with malice and ~~in bad faith for~~ the ~~sole purpose of~~willful intent to financially ~~injuring~~injure and ~~destroying the~~destroy Plaintiff's good credit, and to cause irreparable damages to ~~the~~ Plaintiff's credit rating and to impugn Plaintiff as being uncreditworthy.

~~25.~~24.  Defendant Maximus knew or should have known that their statements were false and willfully and deliberately continued to publish them or caused them to continue to be published with actual knowledge that they were false or with reckless disregard of whether they were false or not.

~~26.~~25. As a result, Plaintiff has sustained damages including out of pocket expenses associated with disputing the false information after notice of its falsity was provided to the Defendant, emotional distress, mental anguish and personal humiliation caused by the fact that the Defendant reported and transmitted or caused to be reported and transmitted false information about Plaintiff to other people. Plaintiff's credit has

7

been destroyed, his FICO score has been lowered, he has been denied credit and had existing credit either cancelled or reduced as a direct result of the false and defamatory statements published by the Defendant.

## COUNT II: AGAINST DEFENDANT MAXIMUS
### (Libel)

27.26. Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

28.27. Beginning on or around July 20, 2015, and continuing thereafter, Defendant Maximus continued to publishhas published untrue statements of fact about the Plaintiff.

29.28. Defendant Maximus published these untrue statements of fact knowing full well that they were false and with reckless disregard of their truth.

30.29. Defendant Maximus' publication was intentional, deliberate and was done with malice and in bad faith for the sole purpose of injuringwith the willful intent to injure Plaintiff.

31.30. As a result of Defendant's intentional actions, Plaintiff has been injured including the significant permanent damage to his good credit.

## COUNT III: AGAINST DEFENDANT MAXIMUS
### (Violation of Maryland Consumer Debt Collection Act)

32.31. Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

33.32. At all times relevant hereto, Defendant Maximus was collecting a debt originally owed to another and is a "collector" as that term is defined by the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §14-201 et seq.

33.    At all times further relevant, Plaintiff was a borrower that previously had an obligation to repay a student loan to the U.S. Department of Education pursuant to a Federal Direct Consolidation Loan Promissory Note dated April 26, 2004.

34.    Plaintiff's federal Direct Loan was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012.

35.    On July 20, 2015, Defendant Maximus sent Plaintiff a debt statement falsely claiming that Plaintiff owed the U.S. Department of Education $40,832.38 and threatened to collect that amount by Treasury offset against all payment streams.

36.    On July 27, 2015, Plaintiff advised Defendant Maximus that the debt was not owed in the amount claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff also provided the Defendant Maximus with proof that the debt had been paid and fully satisfied.

37.36.  Plaintiff requested that the Defendant Maximus validate the debt and to cease reporting derogatory credit information to credit reporting agencies concerning the student loan debt and to cease and desist further collection efforts on the disputed debt. Plaintiff also instructed the Defendant Maximus to update the credit bureau reports to which they had reported the disputed debt and to delete the trade line from each of those credit bureau reports immediately.

38.37.  Despite Plaintiff's written notification to Defendant Maximus that the student loan debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendant Maximus continued to attempt to collect the debt and report the debt to third parties as being past due in an amount not owed and in a

collection status without any lawful basis for collecting or attempting to collect on the disputed ~~student loan~~ debt.

~~39.~~38. Pursuant to §14-202(3) of the Maryland Commercial Law Code Annotated, "in collecting or attempting to collect an alleged debt a collector may not: (3) Disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false."

~~40.~~39. Despite ~~having received~~receiving the Plaintiff's written demand for a debt validation and notice that Plaintiff disputed the debt, Defendant Maximus did not provide any such validation of the debt or respond to any of the Plaintiff's many correspondence that he sent to the Defendant but continued to disclose false information about the disputed debt which has affected the Plaintiff's reputation for credit worthiness with actual knowledge that the information that they were disclosing was inaccurate and false, in violation of §14-202(3) of the Md. Code Ann. Com. Law.

~~41.~~40. Pursuant to §14-202(8) of the Maryland Commercial Law Code Annotated, a debt collector cannot "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

~~42.~~41. Defendant Maximus was on notice on July 27, 2015 that the debt was not owed in the amount claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Defendant Maximus also had proof of such settlement payment but continued to claim, attempt, or threaten to enforce a right to collect the disputed debt with actual knowledge that the right did not exist, in violation of §14-202(8) of the Md. Code Ann. Com. Law.

Formatted

43.42. Pursuant to §14-202 of the Maryland Commercial Law Code, Defendant Maximus is liable to Plaintiff for damages proximately caused by these violations, including damages for emotional distress or mental anguish suffered by Plaintiff with or without accompanying physical injury.

## COUNT IV: AGAINST DEFENDANT FMS
### (Defamation/Libel/Slander)

44.43. Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

45.44. Beginning on or about September 1, 2015, and continuing thereafter, Defendant FMS made or caused to be made unprivileged publication of statements to third parties to the effect that Plaintiff was delinquent for more than 790 months on his student loan with the U.S. Department of Education in the amount of $51,013.76. Defendant FMS' statements were false and slanderous and were made with malice and in bad faith for the sole purpose of financially injuring and destroying the Plaintiff's good credit, and to cause damages to Plaintiff's credit rating and to impugn Plaintiff as being uncreditworthy.

46.45. Defendant FMS' statements were false and slanderous and were made with malice and the willful intent to financially injure and destroy Plaintiff's good credit, and to cause irreparable damages to the Plaintiff's credit rating and to impugn Plaintiff as being uncreditworthy. Defendant FMS knew or should have known that their statements were false and willfully and deliberately continued to publish them or caused them to continue to be published with actual knowledge that they were false or with reckless disregard of whether they were false or not.

11

47.46.  As a result, Plaintiff has sustained damages including out of pocket expenses associated with disputing the false information after notice of its falsity was provided to the Defendant, emotional distress, mental anguish and personal humiliation caused by the fact that the Defendant reported and transmitted or caused to be reported and transmitted false information about Plaintiff to other people. Plaintiff's credit has been destroyed, his FICO score has been lowered, he has been denied credit and had existing credit either cancelled or reduced as a result of the false and defamatory statements published by the Defendant.

## COUNT V: AGAINST DEFENDANT FMS
### (Libel)

48.47.  Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

49.48.  Beginning on or around September 1, 2015, and continuing thereafter, Defendant FMS continued to publishhas published untrue statements of fact about the Plaintiff.

50.49.  Defendant FMS published these untrue statements of fact knowing that they were false and with reckless disregard of their truth.

51.50.  Defendant FMS' publication was intentional, deliberate and was done with malice and in bad faith for the sole purpose of injuringwith the willful intent to injure Plaintiff.

52.51.  As a result of Defendant's intentional actions, Plaintiff has been injured including the significant damage to his credit.

12

## COUNT VI: AGAINST DEFENDANT FMS
### -(Violation of Maryland Consumer Debt Collection Act)

Formatted: Indent: First line:  0"

53.52. Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

54.53. At all times relevant hereto, Defendant FMS was collecting a debt originally allegedly owed to another and is a "collector" as that term is defined by the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §14-201 *et seq.*

54.    At all times further relevant, Plaintiff was a borrower that previously had an obligation to repay a student loan to the U.S. Department of Education pursuant to a Federal Direct Consolidation Loan Promissory Note dated April 26, 2004.

55.    Plaintiff's federal Direct Loan was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012.

56.    On September 1, 2015, Defendant FMS sent Plaintiff a dunning letter falsely claiming that Plaintiff owed the U.S. Department of Education $51,013.76.

57.    On September 14, 2015, Plaintiff advised Defendant FMS that the debt was not owed in the amount claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff also provided the Defendant FMS with proof that the debt had been paid and fully satisfied. Plaintiff requested that the Defendant FMS validate the debt and to cease reporting derogatory credit information to credit reporting agencies concerning the student loan debt and to cease and desist further collection efforts on the disputed debt.

58.57. Plaintiff also instructed the Defendant FMS to update the credit bureau reports to which they had reported the disputed debt and to delete the trade line from each of those credit bureau reports immediately.

59.58. Despite Plaintiff's written notification to Defendant FMS that the ~~student loan~~ debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendant FMS continued to attempt to collect ~~the debt~~ and report the debt to third parties as being past due in an amount not owed and in a collection status without any lawful basis for collecting or attempting to collect on the disputed debt. Defendant FMS also continued to communicate with Plaintiff despite receiving his cease and desist letter.

60.59. Pursuant to §14-202(3) of the Maryland Commercial Law Code Annotated, "in collecting or attempting to collect an alleged debt a collector may not: (3) Disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false."

61.60. Despite receiving Plaintiff's demand for a debt validation and notice that Plaintiff disputed the debt, Defendant FMS did not provide any such validation of the debt or respond to Plaintiff's correspondence that he sent to the Defendant but continued to disclose information about the disputed debt which has affected Plaintiff's reputation for credit worthiness with actual knowledge that the information that they were disclosing was false, in violation of §14-202(3) of the Md. Code Ann. Com. Law.

62.61. Pursuant to §14-202(8) of the Maryland Commercial Law Code Annotated, a debt collector cannot "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

63.62. Defendant FMS was on notice on September 1, 2015 that the debt was not owed in the amount claim and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012.

14

Defendant FMS was also had proof of such settlement payment, but continued to claim, attempt, or threaten to enforce a right to collect the disputed debt with actual knowledge that the right did not exist, in violation of §14-202(8) of the Md. Code Ann. Com. Law.

64.63.  Pursuant to §14-202 of the Maryland Commercial Law Code, Defendant FMS is liable to Plaintiff for damages proximately caused by the violations, including damages for emotional distress or mental anguish suffered by Plaintiff with or without accompanying physical injury.

| Formatted |
| --- |

### COUNT VII: AGAINST DEFENDANT CONSERVE
(Defamation/Libel/Slander)

65.64.  Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

66.65.  Beginning on or about September 24, 2015, and continuing thereafter, Defendant ConServe made or caused to be made unprivileged publication of statements to third parties to the effect that Plaintiff was delinquent for more than 730 months on his student loan with the U.S. Department of Education in the amount of $51,129.88. Defendant ConServe's statements were false and slanderous and were made with malice and in bad faith for the sole purpose of financially injuring and destroying the Plaintiff's good credit, and to cause damages to Plaintiff's credit rating and to impugn Plaintiff as being uncreditworthy.

67.66.  Defendant ConServe's statements were false and slanderous and were made with malice and the willful intent to financially injure and destroy Plaintiff's good credit, and to cause irreparable damages to the Plaintiff's credit rating and to impugn Plaintiff as being uncreditworthy. Defendant ConServe knew or should have known that their statements were false and willfully and deliberately continued to publish them or

15

caused them to continue to be published with actual knowledge that they were false or with reckless disregard of whether they were false or not.

68.67. As a result, Plaintiff has sustained damages including out of pocket expenses associated with disputing the false information after notice of its falsity was provided to the Defendant, emotional distress, mental anguish and personal humiliation caused by the fact that the Defendant reported and transmitted or caused to be reported and transmitted false information about Plaintiff to other people. Plaintiff's credit has been destroyed, his FICO score has been lowered, he has been denied credit and had existing credit cancelled or reduced as a result of the false and defamatory statements published by the Defendant.

**COUNT VIII: AGAINST DEFENDANT CONSERVE**
(Libel)

**Formatted:** Indent: First line:  0"

69.68. Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

70.69. Beginning on or around September 24, 2015, and continuing thereafter, Defendant ConServe continued to publish untrue statements of fact.

71.70. Defendant ConServe published these untrue statements of fact knowing that they were false and with reckless disregard of their truth.

72.71. Defendant ConServe's publication was intentional, deliberate and ~~was done~~ with malice and ~~in bad faith for~~with the ~~sole purpose of injuring~~willful intent to injure Plaintiff.

73.72. As a result of Defendant's intentional actions, Plaintiff has been injured including the significant damage to his credit.

16

### COUNT IX: AGAINST DEFENDANT CONSERVE
<u>(Violation of Maryland Consumer Debt Collection Act)</u>

~~74.~~73. Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

~~75.~~74. At all times relevant hereto, Defendant ConServe was collecting a debt originally owed to another and is a "collector" as that term is defined by the Maryland Consumer Debt Collection Act, as defined at Md. Code Ann., Com. Law §14-201 *et seq.*

~~76.~~75. At all times further relevant, Plaintiff was a borrower that previously had an obligation to repay a student loan to the U.S. Department of Education pursuant to a Federal Direct Consolidation Loan Promissory Note dated April 26, 2004. Plaintiff's federal Direct Loan was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on or about February 14, 2012.

~~77.~~76. On September 24, 2015, Defendant ConServe sent Plaintiff a dunning letter falsely claiming that Plaintiff owed the U.S. Department of Education $51,129.88.

~~78.~~77. On October 2, 2015, Plaintiff advised Defendant ConServe that the debt was not owed in the amount claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff ~~also~~ provided Defendant ~~ConServe~~ with proof that the debt had been paid and fully satisfied.

~~79.~~78. Plaintiff requested that Defendant ConServe validate the debt and to cease reporting derogatory credit information to credit reporting agencies concerning the student loan debt and to cease and desist further collection efforts on the disputed debt. Plaintiff also instructed Defendant ConServe to update the credit bureau reports to which

17

they had reported the disputed debt and to delete the trade line from each of those credit bureau reports immediately.

80.79. Despite Plaintiff's written notification to Defendant ConServe that the student loan debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendant ConServe continued to attempt to collect the debt and report the debt to third parties as being past due and in a collection status without any lawful basis for collecting or attempting to collect on the disputed student loan debt.

81.80. Pursuant to §14-202(3) of the Maryland Commercial Law Code Annotated, "in collecting or attempting to collect an alleged debt a collector may not: (3) Disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false."

82.81. Despite having received Plaintiff's written demand for a debt validation and notice that Plaintiff disputed the debt, Defendant ConServe did not provide any such validation of the debt or respond to Plaintiff's correspondence but continued to disclose information about the disputed student loan debt which has affected Plaintiff's reputation for credit worthiness with actual knowledge that the information that they were disclosing was inaccurate and false, in violation of §14-202(3) of the Md. Code Ann. Com. Law.

83.82. Pursuant to §14-202(8) of the Maryland Commercial Law Code Annotated, a debt collector cannot "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist."

84.83. Defendant ConServe was on notice on October 2, 2015 that the debt was not owed in the amount claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012.

18

Defendant ~~FMS~~ConServe was ~~also~~ provided proof of such settlement payment, but continued to claim, attempt, or threaten to enforce a right to collect the disputed debt with knowledge that the right did not exist, in violation of §14-202(8) of the Md. Code Ann. Com. Law.

85.84. Pursuant to §14-202 of the Maryland Commercial Law Code, Defendant ~~FMS~~ConServe is liable to Plaintiff for damages proximately caused by these violations, including damages for emotional distress or mental anguish suffered by Plaintiff with or without accompanying physical injury.

## COUNT X: AGAINST ALL DEFENDANTS
### (Violation of Maryland Consumer Credit Reporting Agencies Act)

86.85. Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

87.86. At all times relevant, Defendants qualified as a "furnisher" under the ~~CCRAA~~Maryland Consumer Credit Reporting Agencies Act ("CCRAA") because they are entities that furnish information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.

88.87. Defendants have continuously reported and furnished or caused to be reported and furnished inaccurate and false information relating to Plaintiff's disputed debt to third parties, (hereafter the "inaccurate information").

89.88. The inaccurate information complained of concerns the payment history, the amount claimed as owed on Plaintiff's disputed debt and the fact of delinquency.

90.89. The reporting and furnishing of inaccurate information harms Plaintiff and his credit repayment history, his financial responsibilities as a debtor and his credit

worthiness. The inaccurate information has been and continues to be disseminated to credit bureaus and credit grantors, both known and unknown.

91.90. Plaintiff has disputed the inaccurate information in writing directly with the Defendants as required under the CCRAA, and enclosed documents on multiple occasions that either proved to the Defendants that their information was inaccurate or provided them with evidence that was supportive of Plaintiff's contentions.

92.91. Notwithstanding the efforts of Plaintiff, Defendants have failed to investigate the dispute, and continue to publish, report, furnish and disseminate or cause to be published, reported, furnished or disseminated such inaccurate information to third parties, persons, entities, and credit grantors with actual knowledge of its inaccuracy.

93.92. Despite Plaintiff's best efforts to date, Defendants have nonetheless deliberately, willfully, intentionally, recklessly, negligently and in bad faith failed to perform any reasonable investigation of the above disputes as required by the CCRAA, have failed to remove the inaccurate information, have failed to note the disputed status of the inaccurate information and have continued to report and furnish or cause to be reported and furnished the inaccurate information about the Plaintiff that they know or reasonably should have known to be inaccurate.

94.93. As a result, Plaintiff has sustained consequential, economic and pecuniary damages.

### COUNT XI: AGAINST ALL DEFENDANTS
#### (Violation of Fair Debt Collection Practice Act)

94.    Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

95.     At all times relevant, Plaintiff was "consumer" and the Defendants were a "debt collector" as defined by section 1692a of the Fair Debt Collection Act ("FDCPA").

96.     At all times further relevant, Plaintiff was a borrower that previously had an obligation to repay a student loan to the U.S. Department of Education pursuant to a Federal Direct Consolidation Loan Promissory Note dated April 26, 2004.

97.     Plaintiff's federal Direct Loan was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012.

98.     Beginning on or about July 20, 2015, and continuing thereafter, Defendants repeatedly sent Plaintiff debt statements and/or letters falsely claiming that Plaintiff was delinquent on his student loan and that Plaintiff owed the U.S. Department of Education between $40,832.38 and $51, 129.88.

99.     On multiple occasions between July 27, 2015 and October 2, 2015, Plaintiff repeatedly advised the Defendants that the debt was not owed in the amounts claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff provided the Defendants with proof that the debt had been paid and fully satisfied, and requested that the Defendants validate the debt and cease reporting derogatory credit information to credit reporting agencies concerning the student loan debt and to cease and desist further collection efforts on the disputed debt.

100.    Defendants have never provided the Plaintiff with validation of the debt, have failed to cease collection of the debt, have failed to cease communication with the Plaintiff, and have continued to make false representation of the character, amount and legal status of the debt, in violation of sections 1692c, 1692e and 1692g of the FDCPA.

101.    Defendants' conduct was intentional and did not result from any bona fide error as evidenced by Plaintiff's multiple written correspondence to the Defendants, and as a result, pursuant to 1692k of the Fair Debt Collection Practice Act, Defendants are liable to Plaintiff for actual and statutory damages including attorney's fees.

## COUNT XII: AGAINT ALL DEFENDANTS
(Violation of Fair Credit Reporting Act, 15 USCA §1681s *et seq.*)

102.    Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

103.    At all times relevant, Plaintiff was "consumer" as that term is defined in 15 U.S.C. §1681a of the Fair Credit Reporting Act ("FCRA").

104.    At all times further relevant, Defendants qualified as a "furnisher" and/or "person who furnishes information" to a Consumer Reporting Agency and knew or should have known of their duties and obligations to the Plaintiff under the FCRA.

105.    Beginning on or about July 20, 2015, and continuing thereafter, Defendants repeatedly sent Plaintiff debt statements and/or letters falsely claiming that Plaintiff was delinquent on his student loan and that Plaintiff owed the U.S. Department of Education between $40,832.38 and $51, 129.88.

106.    On multiple occasions between July 27, 2015 and October 2, 2015, Plaintiff repeatedly advised the Defendants in writing at the address specified by the Defendants that the debt was not owed in the amounts claimed and that the debt was paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012. Plaintiff provided the Defendants with proof that the debt had been paid and fully satisfied, and requested that the Defendants validate the debt and to cease

22

reporting derogatory credit information to credit reporting agencies concerning the student loan debt and to cease and desist further collection efforts on the disputed debt.

107.   Plaintiff also instructed the Defendants to update the credit bureau reports to which they had reported the disputed debt and to delete the trade line from each of those credit bureau reports immediately.

108.   Despite Plaintiff's written notifications to the Defendants that the student loan debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendants have continued to, among other things, report the debt to third parties as being in a collection status and past due in an amount not owed by the Plaintiff with specific knowledge that the information is inaccurate and/or disputed.

109.   Pursuant to 15 U.S.C. §1681s-2(a)(1) "a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

110.   Defendants violated 15 USC §1681s-2(a)(1)(A) by continuing to furnish inaccurate information relating to the disputed debt to consumer reporting agencies, including, Experian, Equifax, Trans Union and other consumer reporting agencies after receiving actual notice from Plaintiff that the information was inaccurate.

111.   Pursuant to 15 U.S.C. §1681s-2(a)(3) "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

112.   Defendants owed Plaintiff a duty to provide notice of the dispute of the debt to the consumer reporting agencies, and have knowingly, willfully and intentionally

continued to breach their duty by furnishing information to numerous consumer reporting agencies and/or third parties without notice that such information is disputed by Plaintiff.

113.    Defendants' records reflected the ongoing dispute over the debt however the Defendants' reports to the consumer reporting agencies and to third parties did not reflect that ongoing dispute. Defendants intended not to report that ongoing dispute.

114.    Defendants intended to report Plaintiff's disputed debt without mentioning Plaintiff's communications or the ongoing dispute reflected throughout Defendant's records and Defendants have never updated the report to reflect the dispute.

115.    Defendants' conduct of reporting the debt without *any* mention of a dispute is misleading in such a way and to such an extent that it can be expected to have an adverse effect and in fact has had an adverse effect.

116.    Defendants have knowingly and intentionally violated their duties in conscious disregard for the rights of Plaintiff, and as a result of Defendants' continuous and ongoing violation of their duties as a furnisher of information under the FCRA including under 15 U.S.C.A. § 1681s-2(b)(1), by failing to report the dispute of the debt, Plaintiff has been affected adversely.

117.    Pursuant to 15 USC §1681n and §§1681n(a)(1)(A) and (a)(2), Plaintiff is entitled to recover damages for the Defendants' willful violations of the FCRA, including statutory and punitive damages, attorney fees and costs.

### COUNT XIII: AGAINST ALL DEFENDANTS
(Intentional Infliction of Emotional Distress)

95. 118.    Plaintiff repeats each and every factual allegation contained in the preceding paragraphs of this Complaint as if set forth at length herein.

96.119.      Defendants deliberately and intentionally violated the Maryland

Consumer Debt Collection Practice Act when they had actual notice that they did not

possess the right to collect the amount claimed as owed on the disputed debt since the

debt had been paid and satisfied through a compromise accepted by the U.S. Department

of Education on February 14, 2012, and was therefore not a legal enforceable debt.

120.    Defendants deliberately and intentionally violated the Fair Credit

Reporting Act when they continued to furnish inaccurate information relating to the

disputed debt to consumer reporting agencies and continued to furnish the information to

consumer reporting agencies without notice that such information was disputed after

receiving actual notice from Plaintiff that the information was inaccurate and disputed.

97.121.      Despite having received such written notice from Plaintiff on

multiple occasions indicating that the debt had been paid and satisfied by a compromise

accepted by the U.S. Department of Education on February 14, 2012, and having

received proof of such settlement payment, Defendants ~~continued~~continue to attempt to

collect the debt knowing full well that they ~~lacked~~lack the right to do so and

~~continued~~continue to claim, attempt, or threaten to enforce a right to collect the disputed

debt with knowledge that the right ~~did~~does not exist.

98.122.      This unlawful conduct was perpetrated by the agents, servants and

employees of the Defendants within the scope of their employment. Defendants are liable

for all of the acts committed by its agents within the scope of their employment.

99.123.      Defendants deliberately and intentionally made false

representations of material fact to third parties and caused Plaintiff to sustain an adverse

credit rating, a lower FICO score and the denial of credit and reduction in existing credit.

~~100.~~ This conduct was perpetrated by the agents, servants and employees of the Defendants within the scope of their employment. Defendants are liable for all of the acts committed by their agents within the scope of their employment.

~~101.~~124.     All of the Defendants' conduct as described in the preceding paragraphs was extreme and outrageous and was done intentionally, recklessly, in bad faith and in deliberate disregard of a high degree of probability that emotional distress would result to the Plaintiff. Defendants knew that their conduct would or could cause emotional distress upon the Plaintiff.

~~102.~~125.     Defendants' conduct was malicious, willful, deliberate and intentional and was done for the sole purpose of inflicting severe emotional distress upon the Plaintiff.

~~103.~~126.     As a result, Plaintiff suffered loss of sleep, headaches, severe mental pain, and depression and will continue to suffer, severe and extreme emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court will:

a)     Enjoin Defendants, its agents, employees, successors and all persons in active concert or participation with it, from pursuing any further claims and collection activity against the Plaintiff arising from the disputed debt;

b)     Enjoin Defendants, its agents, employees, successors and all persons in active concert or participation with it, from reporting the disputed debt as delinquent, defaulted and/or in a collection status;

c)      Enter judgment in his favor and against the Defendants, jointly and severally, on all of the claims in an amount of $~~30~~500,000, as and for compensatory, statutory and punitive damages plus;

d)      An award of general damages for the defendants' wrongful acts;

e)      An award of special damages for the defendants' wrongful acts;

f)      An award of costs and reasonable attorney fees incurred in this action;

g)      An award of punitive damages in an amount to be determined at trial for the defendants' reprehensible and outrageous conduct;

h)      An award of punitive damages in an amount to be determined at trial to deter the defendants' future reprehensible and outrageous conduct; and

i)      For such further and other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, Joseph Johnson, Jr., demands a trial by jury on each and every issue triable by jury.

Respectfully submitted,

~~October 23~~December 4, 2015

Joseph Johnson, Jr.
Post Office Box 441572
Fort Washington, MD   20749
240-605-9921

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2015, a true and correct copy of the First

Amended Complaint and Jury Demand was served on all counsel of record via U.S. Mail.

_____
Joseph Johnson, Jr.

**Formatted:** Justified, Indent: First line:  0.5"

28