## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | |
|---|---|
| JOSEPH JOHNSON, JR., | |
| Plaintiff, | |
| v. | |
| MAXIMUS, INC. | Case No. 8:16-cv-00014-PWG |
| d/b/a MAXIMUS Federal Services, Inc. *et al.*, | |
| Defendants. | |

## DEFENDANTS' JOINT MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Defendants MAXIMUS, Inc., d/b/a/ MAXIMUS Federal Services, Inc. ("MAXIMUS"), Financial Management Systems, Inc. ("FMS"), and Continental Service Group, Inc., d/b/a ConServe ("ConServe") (collectively "Defendants"), by and through their respective undersigned counsel, submit this joint memorandum of law in support of their *Joint Motion To Dismiss Plaintiff's First Amended Complaint* (the "Motion").

## I. INTRODUCTION

For at least the eleventh time in eight years, Plaintiff Joseph Johnson, Jr. ("Johnson") attempts to avoid his student loan obligations by filing suit against those tasked with servicing and collecting these loans. In this case, as with his other recent cases, Johnson's claims arise from his allegation that he settled and satisfied his consolidated federal student loans (the "Purported Settlement") in connection with his correspondence to the U.S. Department of Education dated February 14, 2012 (the "February 14, 2012 Letter").

This Court recently determined that Johnson is collaterally estopped from asserting the Purported Settlement as a basis for claims insofar as the Circuit Court for Prince George's

County rejected the validity of the Purported Settlement by rejecting Johnson's assertion that the February 14, 2012 Letter evidenced a settlement of his student loan obligations, and instead determining that the Johnson's loans remained outstanding.  *Johnson v. Experian Information Systems, Inc.*, Case No. PWG-15-558, 2015 WL 7769502 (D. Md. Nov. 17, 2015) ("*Johnson X*") (citing *Johnson v. Premier Credit of North America, LLC*, Case No. CAL 14-17920 (Cir. Ct. Prince George's Cnty., filed July 14, 2014) as collaterally estopping such allegations).  Just as *Johnson X* resulted in a dismissal with prejudice based on collateral estoppel, this case must be dismissed with prejudice for precisely the same reason.

## II. BACKGROUND

This Court is well versed in the history of Johnson's litigation over his federal student loan debt.  *Johnson X*, 2015 WL 7769502, at *1-5.[1]  The Defendants only briefly summarize Johnson's litigation history below, recognizing the Court's familiarity with the subject matter.

### A.  Johnson's Federal Student Loan History.

Johnson took out federally guaranteed student loans in order to attend classes at the University of Maryland University College ("UMUC") from the fall 1993 semester through the spring 1996 semester.  *See Johnson v. U.S. Dept. of Educ., et al.*, 580 F. Supp. 2d 154, 155 (D.D.C. 2008), *aff'd without op.*, No. 08-5468 (D.C. Cir. Apr. 10, 2009) ("*Johnson I*").  On February 16, 1993, prior to obtaining any federal student loans, Johnson had been indicted for larceny and burglary, for which he was convicted and  received a suspended sentence on April 21, 1993.  *Id.*  While at UMUC, Johnson took several courses in UMUC's paralegal studies program, but was forced to withdraw on April 29, 1996, when he was compelled to report to prison to serve his sentence for a subsequent forgery conviction.  *Id.*  Johnson later consolidated

---

[1] For the convenience of this Court, Defendants will use the abbreviated names given to the numerous preceding litigations in this Court's *Johnson X* Memorandum Opinion granting summary judgment for Experian.

his all of his federal student loan obligations into one by signing a Federal Direct Consolidation Loan Promissory Note in April of 2004.  *Id.*; Am. Compl. ¶ 6, ECF No. 9.

### B. Johnson Sues Contractual Servicers of the Loan Debt Based on Allegations Related to the U.S. Department of Education's Refusal to Discharge the Loan Debt.

Following the 2004 consolidation of Johnson's student loan debt, he repeatedly sought a discharge of his obligation from the U.S. Department of Education, both through administrative means and through the courts.[2]  After failing in his efforts to force the U.S. Department of Education to discharge his student loan obligations, Johnson turned his attention to those entities servicing those obligations on behalf of the federal government.  Merely three weeks after the dismissal of *Johnson II* on *res judicata* and collateral estoppel grounds, Johnson filed suit, for the third time, against ACSES and ACS, this time in the District Court for the Northern District of Texas.  *Johnson v. Affiliated Comput. Servs., Inc., et al.*, Case No. 3:10-cv-2333-B, 2011 WL 4011429, at *1 (N.D. Tex. Sept. 9, 2011) ("*Johnson III*").  In *Johnson III*, Johnson brought several causes of action against the defendants, all of which were based on his allegation that

---

[2] While he pursued lawsuits against private companies, Johnson also pursued a parallel line of cases against the federal government and quasi-governmental entities.  *Johnson I*, 580 F. Supp. 2d at 155 (suing the U.S. Department of Education and federal contractor ACS Education Solutions, LLC ("ACSES") to discharge his student loan obligations on the grounds of false certification of his eligibility to become a paralegal and forgery of his signature on the loan promissory notes), *and Johnson v. Duncan, et al.*, 746 F. Supp. 2d 163, 165-67 (D.D.C. 2010) ("*Johnson II*") (again suing the U.S. Department of Education and ACSES seeking discharge of his student loan obligations on the same grounds as in *Johnson I*, which the court dismissed "pursuant to the doctrines of *res judicata* and collateral estoppel").  In 2011, Johnson filed two unsuccessful lawsuits against Sallie Mae with respect to the consolidation of his federal student loans.  In *Johnson v. Sallie Mae, Inc.*, the Circuit Court dismissed Johnson's claims with prejudice.  Case No. CAL11-05792 (Cir. Ct. Prince George's Cnty., filed Mar. 7, 2011) ("*Johnson V*").  Likewise in *Johnson v. Sallie Mae, Inc.*, the District Court of Maryland for Prince George's County dismissed Johnson's case with prejudice.  No. 050200443282010 (D. Ct. Prince George's Cnty. filed Dec. 2, 2010), and the Circuit Court dismissed Johnson's appeal of the District Court's dismissal.  *Johnson v. Sallie Mae, Inc.*, Case No. CAL11-13184 (Cir. Ct. Prince George's Cnty. filed May 25, 2011) ("*Johnson VI*").  In 2012, Johnson brought suit against the federal government seeking damages and other equitable relief related to purported errors in the administration of his federal student loans.  *Johnson v. United States*, 105 Fed. Cl. 85, 89-89 (Ct. Fed. Cl. 2012) ("*Johnson VII*").  In his complaint in *Johnson VII*, Johnson alleged violations of the Administrative Procedures Act and Higher Education Act, negligence, and breach of contract by the Department of Education in connection with the consolidation of his student loans.  105 Fed. Cl. 85, 87 (Fed. Cl. 2012).  The Court of Federal Claims dismissed all of Johnson's claims for lack of subject matter jurisdiction.  *Id.* at 95.  On June 19, 2015, Johnson filed yet another suit against the Department of Education regarding this student loan debt. *Johnson v. Duncan et al.*, Case No. 8:15-cv-01820-GJH (D. Md. filed June 19, 2015).

ACSES and ACS were responsible, at least in part, for the U.S. Department of Education's denial of his discharge request. *Id.* at *1. The *Johnson III* court rejected Johnson's "attempt to assign responsibility for the denial of discharge directly to the servicer of his loans" and dismissed the complaint in its entirety w*ith prejudice. Id.* at *1, 10.[3]

After the *Johnson III* dismissal on May 16, 2012, Johnson filed suit against Xerox Education Solutions LLC, and several other Xerox entities (collectively "Xerox"), in Prince George's County, Maryland. *Johnson v. Xerox Educ. Sols. LLC*, No. 050200145112012 (D. Ct. Prince George's Cnty. filed May 16, 2012); *Johnson v. Xerox Educ. Sols. LLC*, No. CAL12-26946 (Cir. Ct. Prince George's Cnty. filed Aug. 31, 2012) (collectively "*Johnson IV*"). [4] The Circuit Court dismissed the case on jurisdictional and *res judicata* grounds, a ruling affirmed on appeal by the Maryland Court of Special Appeals. *Id.* Johnson filed a *writ of certiorari* to the Maryland Court of Appeals, however the Court of Appeals declined the case in September of 2014. *Johnson v. Xerox Educ. Sols.*, 440 Md. 117, 99 A.3d 780 (Md. 2014).

### C. Johnson Sues Numerous Contractual Servicers of the Loan Debt Based On Alleged Incorrect Servicing and Reporting To Third Parties Regarding the Status of His Federal Student Loan Debt.

During the pendency of his appeals in *Johnson IV*, Johnson filed a second suit in the District Court of Maryland for Prince George's County against Xerox Educational Services LLC, and Xerox Corporation, which was removed to the Circuit Court for Prince George's County,

---

[3] Johnson appealed the decision to the Fifth Circuit Court of Appeals, which affirmed the District Court's ruling. *Johnson v. Affiliated Computer Servs., Inc.*, 500 Fed. App'x 265, 265-67 (5th Cir. 2012) (per curiam) (describing Johnson's appeal as "one of his many lawsuits seeking to avoid repaying his student loans").

[4] In the Amended Complaint, Johnson brought claims alleging "breach of contract, fraud or deceit" against the Xerox Defendants, and brought claims against K&L Gates and Ms. Ashmore for "intentional misrepresentation, negligent misrepresentation, breach of fiduciary duty, tortious interference with contractual relations, and constructive fraud." *Johnson X*, 2015 WL 7769502, at *3 (quoting *Johnson v. Xerox Educ. Sols. LLC*, No. 436, at *6 (Md. Ct. Spec. App. Sept. Term 2013, filed May 22, 2014) (unreported)). Once in the Circuit Court, Johnson amended his pleading to add as defendants K&L Gates, LLP and Alison Ashmore, an attorney at K&L Gates who had represented the defendants in *Johnson III*. *Id.*

4

and then subsequently removed to this Court.  *Johnson v. Xerox Educ. Sols. LLC*, No. 050200025722014 (D. Ct. Prince George's Cnty. filed Feb. 11, 2014); *Johnson v. Xerox Educ. Sols. LLC*, No. CAL14-05649 (Cir. Ct. Prince George's Cnty. filed Mar. 11, 2014); *Johnson v. Xerox Educ. Sols. LLC*, Case No. GJH-14-1542, (D. Md. filed May 9, 2015) (collectively referred to as "*Johnson VIII*").  In *Johnson VIII*, Johnson brought twelve claims related to the servicing, reporting, and treatment of his student loan debt by the defendants, including violations of the Maryland Fair Credit Reporting Act, defamation, libel, and slander.[5]  *Johnson X*, 2015 WL 7769502, at *3 (citing *Johnson VIII*, ECF. No. 35).  The defendants filed a motion to dismiss, which Johnson opposed.  *Id.*  Before the defendants could reply, Johnson voluntarily dismissed the case pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  *Id.*

Shortly after initiating his latest suit against Xerox, on February 14, 2012, Johnson mailed the February 14, 2012 Letter to the U.S. Department of Education.  In the February 14, 2012 Letter, Johnson disputed the validity of his student loan obligations under the April 24, 2004 promissory note but included a check in the amount of $12,390.00,[6] purportedly offered in full satisfaction of such obligations.  *Johnson X*, 2015 WL 7769502, at *6; Am. Compl. ¶ 7, ECF No. 9.  Johnson thereafter asserted that his student loan obligations were fully satisfied (*i.e.*, the Purported Settlement).  *Johnson X*, 2015 WL 7769502, at *6; *e.g.*, Am. Compl. ¶ 14, ECF No. 9.

While *Johnson VIII* remained pending, Johnson filed another action in the District Court of Maryland for Prince George's County, this one against Xerox Educational Solutions LLC (and other Xerox entities, for at least the third time) and Premier Credit of North America.  The case was subsequently removed to the Circuit Court for Prince George's County.  *Johnson v. Premier*

---

[5] In *Johnson VI* Johnson alleged that the defendants improperly processed payments towards the student loan debt and improperly accrued interest on his student loan obligations.

[6] As integrated into the timeline of Johnson's numerous lawsuits, Johnson sent this letter to the U.S. Department of Education during the litigation of *Johnson III*.

*Credit of N. Am., LLC,* No. 050200077212014 (D. Ct. Prince George's Cnty. filed Apr. 2, 2014); *Johnson v. Premier Credit of N. Am.*, *LLC*, No. CAL14-17920 (Cir. Ct. Prince George's Cnty. filed July 14, 2014) (collectively "*Johnson IX"*).[7]

*Johnson IX* was based upon the Purported Settlement.[8]  *Johnson X*, 2015 WL 7769502, at *6 (explaining that *Johnson IX* centered around the issue of "whether Johnson settled his student loan debts . . . .").  After Premier Credit was dismissed on November 26, 2014, the remaining Xerox defendants moved for summary judgment.  *Johnson X*, 2015 WL 7769502, at *4 (citing *Johnson IX*, No. CAL14-17920).  On April 13, 2015, without a written opinion, the Circuit Court for Prince George's County granted Xerox's motion for summary judgment and dismissed all of Johnson's claims with prejudice.  *Johnson IX*, No. CAL14-17920, 2015 WL 3649452 (Md. Cir. Ct. May 21, 2015).

In granting the defendants' motion for summary judgment, and denying Johnson's partial motion for summary judgment on the breach of contract claim, the court implicitly rejected Johnson's argument that the Purported Settlement in fact satisfied his student loan obligations. *Johnson X*, 2015 WL 7769502, at *7 ("Even though the circuit court in *Johnson IX* did not issue a written opinion explaining its order, it is clear that [by granting summary judgment in favor of the defendants] the circuit court rejected Johnson's claim that he had a settlement agreement that discharged his student loan obligations.  Therefore, the issue of whether there was a valid

---

[7] When the matter was removed to the Circuit Court for Prince George's County, Premier Credit of North America, Xerox Education Solutions LLC, Xerox Business Services LC, and Xerox Corporation were listed as defendants.

[8] Johnson brought the following claims against all the defendants, every one of which was based on the Purported Settlement: libel, violations of the Maryland Fair Credit Reporting Act, intentional infliction of emotional distress, and violations of the Maryland Consumer Debt Collection Act.  *Johnson X*, 2015 WL 7769502, at *4.  Solely against the Xerox defendants, Johnson also alleged claims of defamation, breach of statutory duty, unjust enrichment, tortious interference with contract, and breach of agreement. *Id.*  Solely against Premier Credit, Johnson also brought claims of "defamation/libel/slander," and failure to use due diligence. *Id.*

settlement agreement [with the U.S. Department of Education] was actually resolved in *Johnson IX*.").[9]

In January of 2015, "having resoundingly failed in his serial efforts to challenge the validity of his student loans and his obligations to repay them," Johnson commenced *Johnson X* by filing suit against Experian Information Systems in the Circuit Court for Prince George's County.   In *Johnson X*, Johnson asserted claims against Experian based on its "reporting the existence and unpaid status of these loans on his credit reports." *Id.* at *4.  On February 26, 2015, Experian removed the case to this Court.  *Id.* at *4 (citing *Johnson v. Experian Info. Sols., Inc.*, No. CAL15-00121 (Cir. Ct. Prince George's Cnty. filed Jan 9, 2015)).  *Johnson X* constituted the second time that Johnson brought an action based on his contention that the Purported Settlement had eliminated his student loan obligations.  In *Johnson X*, Johnson asserted four claims against Experian: (i) violation of the Maryland Consumer Credit Reporting Agencies Act; (ii) violation of the Fair Credit Reporting Act; (iii) defamation; and (iv) libel.  *Id.* at * 4.  As explained by this Court,

> The essence of Johnson's claims against Experian is his contention that Experian inaccurately reported the existence of his unpaid student loans. . . . In Johnson's complaint, he states that he 'settled the [student loan] accounts in full in February 2012' and 'sent Experian written notice of his dispute, with proof that his accounts were settled in full'. . . . [Consequently,] [t]he issue of whether Johnson settled his student loans debts as they relate to Johnson's current claims against Experian is identical to the issue previously decided in *Johnson IX* of whether Johnson settled his student loan debts as they relate to Xerox Education Solutions LLC and its affiliates.

2015 WL 7769602, at *6 (quoting Am. Compl., *Johnson X*, Case No. PWG-15-558, 2015 WL 7769502 (D. Md. Nov. 17, 2015), ECF No. 2).

---

[9] On or about May 13, 2015, Johnson appealed the grant of summary judgment in *Johnson IX* to the Maryland Court of Special Appeals.  This appeal is still pending.

This Court then proceeded to analyze the facts and circumstances pursuant to the test set forth by the Fourth Circuit Court of Appeals in the case of *In Re Microsoft Corporation Antitrust Litigation*. *Id.* at *6-10 (citing 355 F.3d 322, 326 (4th Cir. 2004)). In doing so, this Court held that the debt being litigated against Experian was the same student loan obligation that was at issue in the *Johnson IX* litigation. *Id.* at *6. This Court next recognized that the issue of whether the student loan debt was fully satisfied had been "actually resolved in *Johnson IX*" when the "circuit court necessarily accepted Xerox's argument that the letter was *not* a bona fide settlement of the student loan accounts that could serve as a basis for Johnson's breach of contract claim." *Id.* at *7. Accordingly, this Court held that Johnson could not "relitigate in this Court the bona fides of his purported settlement letter, which have been rejected in *Johnson IX*." This Court then found the issue of whether the Purported Settlement had actually resolved Johnson's student loan obligations to be both "critical and necessary" to the judgment entered in *Johnson IX*, as well as a "necessary component" of all of Johnson's claims against Experian. *Id.* at *8 (explaining that the crux of every charge against Experian is that it, like the Xerox defendants, "published false information stating that Johnson was delinquent in his student loans and that the loans had been sent to collection"). Concluding that the remaining two elements of *In Re Microsoft* test were satisfied, this Court held that all of Johnson's claims were barred under the doctrine of collateral estoppel and dismissed Johnson's case *with prejudice*. *Id.* at *9.

### D. Johnson Files Suit Against Defendants MAXIMUS, FMS, and ConServe.

#### 1. *Background of Factual Allegations Underlying The Present Case.*

This case stems from the U.S. Department of Education's September 2013 award of a contract to MAXIMUS to service federal student loan debt. Am. Compl. ¶ 8, ECF No. 9. Johnson alleges that in connection with its servicing activities, MAXIMUS sent him a letter in

July of 2015 notifying him that he was in default on his student loan obligations. *Id.* at ¶ 8. Johnson alleges that he sent a letter to MAXIMUS dated July 27, 2015 in which he informed MAXIMUS that his student loan obligations had been satisfied through the Purported Settlement. *Id.* at ¶ 10. Johnson alleges that his refusal to pay his student loan obligations following MAXIMUS's notification of his default resulted in a transfer to FMS for collection. *Id.* at ¶ 13. Johnson alleges that when FMS contacted him to demand payment of his student loan obligations later in September of 2015, he informed FMS that his loans had been satisfied through the Purported Settlement. *Id.* at ¶ 14. Johnson alleges that later in September of 2015, after he refused FMS' demand for payment, his account was transferred to ConServe for collection. *Id.* at ¶ 17. Johnson alleges that when ConServe contacted him to arrange payment, he informed ConServe that his student loan obligations were fully satisfied through the Purported Settlement. *Id.* at ¶ 18. Johnson alleges multiple times in his Amended Complaint that the Defendants alleged credit reporting of his student loan obligations as owed and delinquent violates various of his statutory and common law rights, and that he has suffered damages as a result.

### 2. *Procedural History of This Case.*

On October 28, 2015, Johnson filed this, his eleventh, lawsuit in connection with his student loan obligations. Johnson commenced this lawsuit in the District Court of Maryland for Prince George's County, naming MAXIMUS, FMS, and ConServe as defendants. Complaint, Case No. 050200266332015 (filed Oct. 28, 2015), ECF No. 2. The claims in Johnson's initial Complaint were predicated on the same Purported Settlement which at that time had already been rejected by the Circuit Court for Prince George's County in *Johnson IX*, and subsequently rejected as barred by collateral estoppel in this Court in *Johnson X*. *See, e.g.*, *id.* at ¶¶ 7, 10, 14,

18.   On December 2, 2015, this case was removed to the Circuit Court for Prince George's County.   ECF No. 7.   Johnson filed his First Amended Complaint on December 4, 2015 ("Amended Complaint").   Am. Compl., ECF No. 9.[10]   Defendants agreed and conferred on removal, and MAXIMUS filed a Notice of Removal on January 4, 2016, effecting the removal to this Court.   Notice of Removal, ECF No. 1.

Johnson's Amended Complaint contains the following claims: Defamation/Libel/Slander separately against each of the Defendants (Counts I, IV, and VII); Libel separately against each of the Defendants (Counts II, V, and VIII); Violation of the Maryland Consumer Debt Collection Act separately against each of the Defendants (Counts III, VI,  and IX); Violation of the Maryland Consumer Credit Reporting Agencies Act jointly against all Defendants (Count X); Violation of the Fair Debt Collection Practice Act jointly against all Defendants (Count XI); Violation of the Fair Credit Reporting Act jointly against all Defendants (Count XII); and Intentional Infliction of Emotional Distress jointly against all Defendants (Count XIII).   Am. Compl. ¶¶ 22-129, ECF No. 9.   Each of these claims is predicated upon his assertion that the Purported Settlement, evidenced by the February 14, 2015 Letter, effected a complete compromise and settlement of Johnson's student loan obligations.   Am. Compl. ¶¶ 7, 12, 14, 16, 18, 20, 23-24 (Count I), 27 (Count II), 34-41 (Count III), 44-45 (Count IV), 48 (Count V), 57-62 (Count VI), 65-66 (Count VII), 69 (Count VIII), 76-84 (Count IX), 88 (Count X), 98-99 (Count XI), 107-08 (Count XII), and 121-23 (Count XIII), ECF No. 9.

The Circuit Court for Prince George's County rejected Johnson's foundational assertion that the Purported Settlement actually settled his student loan obligations in *Johnson IX*.   Then, this Court, in *Johnson X*, held that the Circuit Court for Prince George's County's rejection of

---

[10] Johnson filed two documents with the Circuit Court entitled "First Amended Complaint." The first on December 4, 2015 and the second on December 7, 2015.  The latter of the two is the operative Amended Complaint in this matter.

the Purported Settlement in *Johnson IX* collaterally estopped Johnson from re-litigating the issue. As in *Johnson X*, the rejection of Johnson's Purported Settlement in *Johnson IX*, once again, collaterally estops Johnson from seeking to relitigate the Purported Settlement here, and requires dismissal of this action, with prejudice.

### III. LAW AND ARGUMENT

#### A.  Standard of Review

As this Court noted in *Johnson X*, Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint where it fails to state a claim upon which relief may be granted.  *See Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  The purpose of the rule "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

If an affirmative defense "'clearly appears on the face of the complaint,'" the Court may rule on that defense when considering a motion to dismiss.  *Kalos v. Centennial Sur. Assocs.*, No.

CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201

F.3d 521, 524 n.1 (4th Cir. 2000)).

## B. The Decisions in *Johnson* IX and *Johnson* X Act As Collaterally Estoppel to All of Johnson's Claims Against Defendants In This Case.

One affirmative defense that is properly the subject of a motion to dismiss is collateral

estoppel.  As noted in *Johnson X*:

> '*Res judicata* and collateral estoppel "are based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised."'  *Grady Mgmt., Inc. v. Epps*, 98 A.3d 457, 472 (Md. Ct. Spec. App. 2014) (citation omitted). While '[c]ollateral estoppel has often been described as a doctrine absorbed within *res judicata*,' it is a separate doctrine that 'operates collaterally to preclude relitigation of *issues* that the same parties already had litigated.' *GAB Enters., Inc. v. Rocky Gorge Devel., LLC*, 108 A.3d 521, 530 (Md. Ct. Spec. App. 2015). *Cf. id.* ('*Res judicata* holds parties to a *claim* that they have previously litigated . . . .') (emphasis added). When considering this defense, "'a court may judicially notice facts from a prior judicial proceeding."' *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010) (quoting *Brooks v. Arthur*, 611 F. Supp. 2d 592, 597 (W.D. Va. 2009)).

*Johnson X*, 2015 WL 7769502, at *6.

The burden is on the defendant asserting the application of collateral estoppel to

demonstrate that the doctrine applies.  In order to demonstrate that collateral estoppel applies in a

particular case, the proponent must demonstrate that

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

### 1. This Case Involves the Same Issue as Johnson IX and Johnson X.

In this case, as in *Johnson IX* and *Johnson X*, the issue in question is whether the

Purported Settlement satisfied Johnson's student loan obligations.  In *Johnson IX*, Johnson sued

Xerox Education Services LLP and others alleging that the Purported Settlement, consisting of his provision of a check for $12,390.00, was "tendered as a settlement payment in full, accord and satisfaction of the disputed student loan account." *Johnson X*, 2015 WL 7769502, at *6.  As noted in *Johnson X*, in *Johnson IX*, Johnson "provided the Circuit Court for Prince George's County a letter dated February 14, 2012, as evidence that his student loan was settled," however the Circuit Court rejected this argument and granted summary judgment in favor of Xerox.  *Id.*

In *Johnson X*, defendant Experian argued that Johnson provided the same February 14, 2012 Letter to it as evidence of Johnson's settlement of his student loan debt.  *Id.* at *7.  This Court held that "Johnson cannot relitigate in this Court the bona fides of his purported settlement letter, which have been rejected in *Johnson IX*.  The issue of whether Johnson settled his student loan debts as relevant to his current litigation against Experian is identical to the issue of whether Johnson settled his student loan debts in *Johnson IX*."  *Id.*  As in *Johnson IX* and *Johnson X*, here, Johnson specifically asserts that the same February 14, 2012 Letter evidences his satisfaction of his student loan obligations (*i.e.* the Purported Settlement), hence this case presents precisely the same issue litigated and rejected in both *Johnson IX* and *Johnson X*.

### 2. *This Court has Previously Determined that the Remaining Four Factors for Collateral Estoppel are Satisfied.*

In *Johnson X*, this Court held that the issue of the validity of the Purported Settlement was "actually resolved in *Johnson IX*," that "[d]eciding the bona fides of Johnson's settlement agreement was "critical and necessary" to Johnson's breach of contract claim [in *Johnson IX*] as it was a required element of the claim," and that "[t]he judgment of the circuit court [in *Johnson IX*] is final and valid despite the fact that Johnson is appealing the decision."  *Id.* (citing *Brown v. Ocwen Loan Servicing, LLC*, No. PJM-14-3454, 2015 WL 5008763, at * 4 & n.8 (D. Md. Aug. 20, 2015) ("Maryland courts have held that pendency of an appeal does not affect the

finality of a judgment for *res judicata* purposes.")). As this Court held in *Johnson X*, Johnson is forever collaterally estopped from asserting, in *any* proceeding, that the Purported Settlement and the accompanying February 14, 2012 Letter effected a settlement of his student loan obligations. As set forth more fully below, each and every one of Johnson's claims in his Amended Complaint is founded precisely upon this premise.[11]

### C. Counts I, IV, and VII: Johnson's "Defamation/Libel/Slander" Claims Are Barred By Collateral Estoppel And Are Preempted by Federal Law.

#### 1. Johnson's "Defamation/Libel/Slander" Claims are Barred by Collateral Estoppel.

Johnson asserts substantially identical claims for "defamation/libel/slander" against each of the Defendants individually in Counts I, IV and VII of his Amended Complaint.  In order to prove defamation, a plaintiff must "'establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm.'" *Gohari v. Darvish*, 363 Md. 42, 54, 767 A.2d 321, 327 (2001) (quoting *Rosenberg v. Helinski,* 328 Md. 664, 675 (1992)).

In support of these claims, Johnson alleges that:

- each of the Defendants engaged in "defamation/libel/slander" under Maryland common law by making "unprivileged . . . false and slanderous" statements to third parties that Johnson's student loan debt was delinquent.  Am. Compl. ¶¶ 22-25 (MAXIMUS), 43-46 (FMS), & 64-67 (ConServe), ECF No. 9;

- each of the Defendants' purportedly defamatory statements was "made with malice and with the willful intent to financially injure and destroy the Plaintiff's good credit, and to cause irreparable damages to the Plaintiff's credit rating and to impugn Plaintiff as being uncreditworthy."  *Id.* at ¶¶ 24, 45 & 66.

- that the Defendants' actions in allegedly disseminating allegedly false information about him has caused him emotional distress, mental anguish, and personal humiliation because "Plaintiff's credit has been destroyed, his FICO score has been lowered, [and] he has been denied credit and had existing credit either

---

[11] As of the time of this filing, Johnson's appeal to the Maryland Court of Appeals of the *Johnson IX* ruling is still pending.

cancelled or reduced as a direct result of the false and defamatory statements published by Defendant[s]." *Id.* at ¶¶ 25, 46 & 67.

While Johnson makes each of these allegations without specifically pleading *what* purportedly defamatory statements each of the Defendants allegedly made, or to *whom* such statements were allegedly made, the only reasonable inference to be drawn is that he is referring to the Defendants' alleged credit reporting of the status of his student loan obligations.

Johnson's "defamation/libel/slander" claims are barred by collateral estoppel and should be dismissed. As one of the elements of his claim, Johnson must demonstrate that the purported statement was actually false. *Gohari*, 363 Md. at 54. As evidence for this element, Johnson asserts that the Purported Settlement resolved his student loan obligations, and that as a result, the Defendants' statements that his student loan obligations remained outstanding and/or were delinquent were therefore false. *See id*. at ¶ 7. Because Johnson has previously litigated, and lost, the issue of the Purported Settlement, he is collaterally estopped from asserting the Purported Settlement as the basis for any future claims, including but not limited to his claims for defamation, libel and slander in this lawsuit. As a result, Counts I, IV and VII must be dismissed with prejudice.

### 2. Johnson's "Defamation/Libel/Slander" Claims are Preempted by the Fair Credit Reporting Act.

Even if Johnson's claims in Counts I, IV, and VII of his Amended Complaint were not barred by collateral estoppel, which Defendants do not concede, these claims are preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). Section 1681(h)(e) provides that "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information against . . . any person who furnishes information to a credit reporting agency . . . except as to false information furnished with malice or willful

intent to injury such consumer." 15 U.S.C. § 1681(h)(e). To allege malice sufficiently to withstand a motion to dismiss, Johnson must plead that Defendants acted "with knowledge that it was false or with reckless disregard of whether it was false or not." *Beachley v. PNC Bank, N.A.*, 2011 WL 3705239, *4 (D. Md. Aug. 22, 2011) (quoting *N.Y. Times v. Sullivan*, 376 U.S. 254, 279–80 (1964)); *see also Alston v. United Collections Bureau, Inc.*, 2014 WL 859013, *11 (D. Md. Mar, 4, 2014) (dismissing plaintiff's Maryland defamation claim as preempted by the FCRA, where plaintiff's complaint contained no factual support for plaintiff's conclusory statement that "[defendant] intentionally and maliciously instructed the credit bureaus to report publicly that plaintiff had a collection account" despite purportedly knowing that such information was false).

Here, as in *Alston*, Johnson makes the conclusory assertion that the Defendants' reports to credit bureaus, if any, were "made with malice and with the willful intent to financially injure and destroy Johnson's good credit." Am. Compl. ¶¶ 24, 45, 66, ECF No. 9. Johnson, however, alleges no <u>facts</u> in support of his assertion, and his failure to plead facts demonstrating the requisite intent on the part of the Defendants means that his state law defamation, libel and slander claims are preempted by the FCRA pursuant to the holding in *Alston*, requiring dismissal of these Counts.

### D. Counts II, V, and VIII: Johnson's Libel Claims Are Barred By Collateral Estoppel, And Are Preempted by The FCRA.

Next, Johnson alleges Defendants committed libel under Maryland common law when they "published untrue statements of fact about Plaintiff" and "continue[] to publish untrue statements of fact knowing full well that they are false and with reckless disregard of their truth." Am. Compl. ¶¶ 27-28 (MAXIMUS), 48-49 (FMS), and 69-70 (ConServe), ECF No. 9. These claims fail for the same reasons as those put forward in Counts I, IV, and VII for

"defamation/slander/libel." First, Johnson's libel claims are barred by collateral estoppel. Just as before in Counts I, IV, and VII, while Johnson does not specifically identify what untrue statements Defendants purportedly published, or to whom, the surrounding context of these claims demonstrates that the actions underlying his libel claims are the Defendants' purported disclosures to third parties regarding the status of his federal student loan debt. Johnson then argues that the February 14, 2012 Letter resulted in a Purported Settlement, consequently making any statement by the Defendants that Johnson's student loan was owed, delinquent, or overdue false. *See id.* at ¶ 7. Because Johnson's central premise—that the February 14, 2012 Letter fully resolved his federal student loan obligations—has already been adjudicated as faulty and without merit in *Johnson IX* and *Johnson X*, Counts II, V, and VIII are barred by collateral estoppel and must be dismissed with prejudice.

Additionally, Johnson's libel claims are preempted by the FCRA. 15 U.S.C. § 1681(h)(e). To sufficiently allege malice to withstand a motion to dismiss, Johnson must plead that Defendants acted "with knowledge that it was false or with reckless disregard of whether it was false or not." *Beachley*, 2011 WL 3705239, at *4 (quoting *Sullivan*, 376 U.S. at 279–80); *see also Alston*, 2014 WL 859013, at *11. Here, instead of pleading actual facts, Johnson's allegations are nothing by conclusory statements. Again, Johnson does not allege what untrue statements Defendants purportedly published, or to whom, but alleges that the publications were "intentional, deliberate, and . . . done with malice and with the willful intent to injure Plaintiff" and caused "significant permanent damage to his good credit." Am. Compl. ¶¶ 29-30 (MAXIMUS), 50-51 (FMS), and 71-72 (ConServe), ECF No. 9. He further avers, without underlying factual reference, that Defendants' purportedly libelous statements were "made with malice and with the willful intent to financially injure and destroy Plaintiff's good credit." Am.

Compl. ¶¶ 24, 45, & 66, ECF No. 9.  Consequently, just as in *Alston*, Johnson does not present facts showing malice sufficient to overcome preemption of his libel claims by the FCRA, thus requiring dismissal of these Counts.

### E. Counts III, VI, and IX: Johnson's Maryland Debt Collection Act Claims Are Barred By Collateral Estoppel, And Are Preempted (At Least In Part) by The Fair Credit Reporting Act.

#### 1. *Collateral Estoppel Prohibits Johnson's Maryland Debt Collection Act Claims.*

Johnson asserts substantially identical claims for violation of the Maryland Consumer Debt Collection Act ("MCDCA") against each of the Defendants, individually, in Counts III, VI and IX of his Amended Complaint.  In support of these claims, Johnson alleges that he was "a borrower that previously had an obligation to repay a student loan to the U.S. Department of Education [which was] . . . paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012."  Am. Compl. ¶¶ 6-7, 33-34 (MAXIMUS), ¶¶ 54-55 (FMS), and ¶¶ 75-76 (ConServe), ECF No. 9.  Johnson alleges that each of the Defendants sent him a letter "falsely claiming" that he owed a sum certain to the U.S. Department of Education, and that he thereafter notified each that the "debt had been paid and satisfied in full". *Id.* at ¶¶ 9-10, 35-36 (MAXIMUS), 56-58 (FMS), & 77-78 (ConServe).  Johnson claims each of the Defendants violated the MCDCA by continuing to "attempt to collect and report the [student loan debt] to third parties as being past due in an amount not owed and in a collection status without any lawful basis." *Id.* at ¶ 37 (MAXIMUS), ¶ 58 (FMS), and ¶ 80 (ConServe).

Johnson's MCDCA claims are barred by collateral estoppel.  As described more fully above, Johnson's MCDCA claims are premised upon his assertion that the Purported Settlement fully resolved his student loan obligations, and, that as a result, the Defendants violated the MCDCA through their alleged continued attempts to collect his student loan obligations and

alleged reporting to credit reporting agencies of the delinquent status of his student loan debt. *See id.* at ¶ 7.  Because Johnson has previously litigated, and lost, the issue of his Purported Settlement of his student loan obligations, he is collaterally estopped from asserting the Purported Settlement as the basis for any future claims, including but not limited to his claims for violations of the MCDCA.  As a result, Counts III, VI and IX must be dismissed with prejudice.

### 2.  *Johnson's MCDCA Claims are Preempted, in part, by the FCRA.*

Even if Johnson's MCDCA claims were not barred by collateral estoppel, they would, to the extent based on Defendants' purportedly improper credit reporting of the student loan debt, be preempted by the FCRA.  *See* 15 U.S.C. § 1681t(b); *see also Awah v. Capital One Bank, NA*, 2015 WL 302880, *4 (D. Md. Jan. 22, 2015) ("Plaintiff cannot state a claim under the MCDCA insofar as it is premised on Defendant's false reporting to a consumer reporting agency pursuant to Section 14-202(3) because his claim falls squarely within Section 1692t(b)(1)(F) and is preempted by the FCRA.").  Consequently, Counts III, VI, and IX must be dismissed with prejudice as they are preempted by the FCRA.

### F.  Counts X: Johnson's Maryland Consumer Credit Reporting Agencies Act Claim Is Barred By Collateral Estoppel, And Is Preempted By The FCRA.

### 1.  *Johnson's Claim is Barred by Collateral Estoppel.*

In Count X of his Amended Complaint, Johnson claims that the Defendants, collectively, violated the Maryland Consumer Credit Reporting Agencies Act ("MCCRAA") by furnishing inaccurate and false information regarding his student loan debt to third parties (presumably credit reporting agencies).  Am. Compl. ¶¶ 86-94, ECF No. 9.  Such claim is barred by collateral estoppel for the same reasons as Johnson's other claims. Johnson alleges that the Defendants violated the MCCRAA by reporting his student loan obligations as outstanding and delinquent.

*Id.*  So, Johnson's MCCRAA claim is premised on the same assertion as his other claims, *i.e.* that the Purported Settlement fully resolved Johnson's student loan obligations.  *Id.* at ¶ 7.  By implication, Johnson asserts that the Defendants' alleged reporting of his student loans as outstanding and delinquent was improper.  Because Johnson previously unsuccessfully litigated this argument in *Johnson IX* and *Johnson X*, Johnson's MCCRAA claim against the Defendants is barred by collateral estoppel and must be dismissed with prejudice.

### 2.  *Johnson's MCCRAA Claims are Preempted by the FCRA.*

Even if Johnson's MCCRAA claims were not barred by collateral estoppel, which Defendants do not admit, his claims would be preempted by the FCRA.  Section 1681t of the FCRA preempts state statutory causes of action based on improper credit reporting.  *See White v. Green Tree Servicing, LLC*, 2015 WL 4647944, *4 (D. Md. Aug. 4, 2015) ("State statutory claims arising from reporting inaccurate information to credit reporting agencies are squarely preempted by the plain language of the FCRA." (citing *Ross v. F.D.I.C.*, 625 F.3d 808, 812-13 (4th Cir. 2010))); *see also Davenport v. Sallie Mae, Inc.*, 2013 WL 4010983, *5 (D. Md. Aug. 2, 2013) (dismissing the plaintiff's MCDCA and Maryland Consumer Protection Act claims premised on the defendant's reporting of inaccurate credit information because "section 1681t(b)(1)(F) preempts state statutory claims that are based on the responsibilities of those who report credit information to CRAs.").  Johnson's MCCRAA claim is premised exclusively on allegedly improper credit reporting by the Defendants and is therefore preempted by the FCRA.  As a result, the Court must dismiss Count X of the Amended Complaint with prejudice.

### G. Count XI: Johnson's Fair Debt Collection Practices Act Claim is Barred by Collateral Estoppel.

In Count XI of his Amended Complaint, Johnson asserts a single claim against all three Defendants pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

20

("FDCPA").  In support of his claim, Johnson alleges that he was "a borrower that previously had an obligation to repay a student loan to the U.S. Department of Education [which was] . . . paid and satisfied in full by a compromise accepted by the U.S. Department of Education on February 14, 2012."  Am. Comp. ¶¶ 97-98, ECF No. 9.  Johnson alleges that each of the Defendants sent him letters or  statements "falsely claiming" that he owed sums certain to the U.S. Department of Education, and that he thereafter notified each that the "debt had been paid and satisfied in full".  *Id.* at ¶¶ 99-100.  Johnson claims the Defendants violated the FDCPA by failing to cease collection of his federal student loan debt, failing to cease communication with Johnson, and continuing to make false representations regarding the character, amount and legal status of the student loan debt.  *Id.* at ¶ 102.

Johnson's FDCPA claims, yet again, are premised upon Johnson's assertion that his Purported Settlement fully resolved his student loan obligations, and that as a result, the Defendants' failure to cease collection of his student loans and failure to cease communication with Johnson regarding his student loan obligations, and the Defendants continuing to credit reporting his student loan obligations therefore violated the FDCPA.  *Id.* at ¶¶ 101-03.  Because Johnson has previously litigated, and lost, the issue of his Purported Settlement as fully resolving his student loan obligations, he is collaterally estopped from asserting the Purported Settlement as the basis for any future claims, including but not limited to his claims for violations of the FDCPA.  As a result, Count XI must be dismissed with prejudice.

### H. Count XII: Johnson's Fair Credit Reporting Act Claim Against is Barred by Collateral Estoppel and Fails as a Matter of Law Under Fed. R. Civ. P. 12(b)(6).

#### *1. Collateral Estoppel Bars Johnson's Fair Credit Reporting Act Claim.*

In Count XII, Johnson asserts that the Defendants, collectively, violated the FCRA by attempting to collect his student loan obligations (which Johnson asserts is a disputed debt), and

by furnishing inaccurate and false information regarding the status of his student loan obligations to consumer reporting agencies.  Am. Compl. ¶¶ 104-19, ECF No. 9.  Johnson's FCRA claim is barred by collateral estoppel for the same reason as his other claims.

In his Complaint, Johnson asserts that he repeatedly advised the Defendants that his Purported Settlement resulted in his student loans being "paid and satisfied in fully by a compromise accepted by the U.S. Department of Education of February 14, 2012."  *Id.* at ¶ 108. Johnson then claims the Defendants violated the FCRA when "[d]espite Plaintiff's written notifications to the Defendants that the student loan debt had been paid and satisfied in full, was disputed and was not owed in the amount claimed, Defendants . . . continued to, among other things, report the debt to third parties as being in a collection status and past due in an amount not owed by the Plaintiff with specific knowledge that the information is inaccurate and/or disputed."  *Id.* at ¶ 110.

Despite the numerous conclusory and factually baseless allegations he makes, the result is the same: as with his other claims, Johnson's FCRA claims are barred by collateral estoppel because the sole factual allegation underlying this count (i.e., regarding the furnishing of inaccurate information regarding the federal student loan debt to consumer reporting agencies) is his assertion that the Purported Settlement satisfied his student loan obligations.  *See id.* at ¶ 7. Johnson has previously unsuccessfully litigated the issue of whether his Purported Settlement satisfied his student loan obligations, therefore all claims based upon this premise are barred by collateral estoppel.   As such, Johnson's FCRA claim against the Defendants is barred by collateral estoppel and Count XII of the Amended Complaint must be dismissed with prejudice.

### 2. Johnson has no Private Right of Action Under § 1681s-2(a) of the FCRA And So This Claim Fails Under Fed. R. Civ. P. 12(b)(6).

Even if Johnson's FCRA claim in Count XII was not barred by collateral estoppel, Count XII of the Amended Complaint fails to state a claim upon which relief may be granted. Johnson argues that the "Defendants violated [the FCRA] § 1681s-2(a)(1)(A) by continuing to furnish inaccurate information regarding the disputed debt to consumer reporting agencies, including Experian, Equifax, TransUnion, and other consumer reporting agencies after receiving actual notice from Plaintiff that the information was inaccurate." Am. Compl. ¶ 112, ECF No. 9. The Defendants, according to Johnson, also violated "§ 1681s-2(b)(1) by failing to report the dispute of the debt," thereby adversely affecting him. *Id.* at ¶ 118.

Johnson's claim pursuant to § 1681s-2(a) of the FCRA—that the Defendants improperly credit reported the status of his student loan debt—fails as a matter of law because Johnson has no private right of action under § 1681s-2(a). *See, e.g.*, *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009) (confirming § 1681s-2(a) is only enforceable by federal and state agencies); *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008) ("[The] FCRA explicitly bars private suits for violations of 1681s-2(a)"); *Awah*, 2015 WL 302880, at *5 ("The FCRA explicitly bars suits for violations of § 1681–2(a), but consumers can still bring private suits for violations of § 1681s–2(b).").

Additionally, Johnson fails to state a claim under § 1681s-2(b) of the FCRA because he fails to allege that he disputed the debt to any credit reporting agency, and fails to allege that any credit reporting agency notified the Defendants of his dispute. To state a claim against a "furnisher" under § 1681s-2(b), a plaintiff must allege that (1) he notified the credit reporting agencies of the disputed information, (2) the credit reporting agencies notified the furnisher-defendant of the dispute, and (3) the furnisher-defendant failed to investigate and modify the

inaccurate information. *See, e.g.*, *Awah*, 2015 WL 302880, at *5 (dismissing plaintiff's FCRA claims where "Plaintiff has not alleged in any of his complaints that he notified a consumer reporting agency of a dispute regarding the accuracy of information reported to it, nor does he assert that Defendant was notified by the consumer reporting agency of a dispute such that it could have violated its duties pursuant to 15 U.S.C. § 1681s–2(b)(1)."); *see also Davenport v. Sallie Mae, Inc.*, 2013 WL 4010983, *3 (D. Md. Aug. 2, 2013) (same). Nowhere in the Amended Complaint does Johnson allege that he disputed the student loan debt to any credit reporting agency. Johnson further fails to allege that any credit reporting agency transmitted notice of a dispute by Johnson to the Defendants. As a result, Count XII of the Amended Complaint fails to state a claim upon which relief may be granted, and must be dismissed with prejudice.

## I.   Count XIII: Johnson's Intentional Infliction of Emotional Distress Claim is Barred by Collateral Estoppel.

In his final cause of action, Count XIII, Johnson claims the Defendants intentionally inflicted emotional distress upon him by intentionally violating the Maryland Consumer Debt Collection Act and the FCRA. Am. Compl. ¶¶ 120-29, ECF No. 9. In support of his claim for emotional distress, Johnson alleges the Defendants:

> deliberately and intentionally violated the Maryland Consumer Debt Collection Act when they had actual notice that they did not possess the right to collect the amount claims as owed on the disputed debt since the debt had been paid and satisfied through a compromise accepted by the U.S. Department of Education on February 14, 2012, and therefore was not a legal enforceable debt.

*Id.* at ¶ 121.

Johnson also claims the Defendants are liable for intentionally inflicting emotional distress on him because when allegedly violating the FCRA, the Defendants allegedly "deliberately and intentionally made false representations of material fact to third parties and

caused the Johnson to sustain an adverse credit rating, a lower FICO score and the denial of credit and reduction in existing credit." *Id.* at ¶ 125.

Johnson's intentional infliction of emotional distress claim is based solely upon the Defendants alleged violations of the MCDCA (Counts III, VI, & IX) and the FCRA (Count XII), and therefore derivative of the claims set forth in such counts, including the allegation the Purported Settlement.  Consequently, Johnson's claim for intentional infliction of emotional distress is likewise barred by collateral estoppel and must be dismissed with prejudice.

## IV. CONCLUSION

Each claim in Johnson's Amended Complaint is premised squarely on his claim that the Purported Settlement satisfied his student loan obligations to the U.S. Department of Education. This foundational assertion also formed the basis of Johnson's claims in *Johnson IX*, in which the Circuit Court for Prince George's County rejected his contention.  *See Johnson X*, 2015 WL 7769502, at *7.  This Court, in *Johnson X*, subsequently held that *Johnson IX* collaterally estops Johnson, forever, from relitigating the issue of whether his Purported Settlement satisfied his student loan obligations. *Id.*  This lawsuit, once again based on the identical premise as *Johnson IX* and *Johnson X*, must be dismissed with prejudice as barred by collateral estoppel, for precisely the same reasons that the Court dismissed Johnson's case in *Johnson X*.

**WHEREFORE**, Defendants MAXIMUS, Inc., d/b/a/ MAXIMUS Federal Services, Inc., Financial Management Systems, Inc., and Continental Service Group, Inc., d/b/a ConServe, by their respective undersigned counsel, respectfully request that this Court enter an Order:

a.  Granting the Motion;

b.  Dismissing this case, with prejudice; and

c.  Granting such other and further relief as is appropriate under the circumstances.

LECLAIRRYAN

By: /s/ Andrew L. Cole_____
Andrew L. Cole, Bar No. 14865
180 Admiral Cochrane Drive,
Suite 520
Annapolis, Maryland 21401
Telephone: (410) 224-3000
Facsimile:  (410) 224-0098
Andrew.Cole@leclairryan.com

*Counsel for Defendant Continental Service
Group, Inc.*

SHULMAN ROGERS GANDAL
PORDY & ECKER P.A.

By: /s/ Gregory D. Grant_____
Gregory D. Grant, Bar No. 13942
Meredith L. Schramm-Strosser, Bar No. 18537
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland  20854-6803
Telephone: (301) 230-5200
Facsimile: (301) 230-2891
ggrant@shulmanrogers.com
mschrammstrosser@shulmanrogers.com

*Counsel for Defendant MAXIMUS, Inc.*

WHITEFORD TAYLOR PRESTON, L.L.P.

By:/s/ Patrick McKevitt_____
Jonathan Claiborne, Esq., Bar No. 347
Patrick McKevitt, Esq., Bar No. 30078
Whiteford Taylor Preston
7 St. Paul Street
Suite 1500
Baltimore, Maryland 21202
Telephone: (410) 347-8700
Facsimile:  (410) 223-3498
jclaiborne@wtplaw.com
pmckevitt@wtplaw.com

*Counsel for Defendant Financial
Management Systems, Inc.*

SESSIONS FISHMAN NATHAN & ISREAL

By: /s/ Kirsten H. Smith_____
Kirsten H. Smith, Esq., *Pro Hac Vice*
3850 N. Causeway Blvd.
Suite 200
Metairie, Louisiana 72002
Telephone: (504) 846-7943
Facsimile: (504) 828-3737
Kihsmith1@sessions.legal

*Counsel for Defendant Financial
Management Systems, Inc.*